United States Court of Appeals
For the First Circuit

No. 97-1957

JEANNINE BERNIER,

Plaintiff, Appellant,

v.

THE UPJOHN COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes and Cyr, Senior Circuit Judges.

David J. Fine with whom Dangel, Donlan and Fine LLP was on
brief for appellant.
William A. McCormack with whom Richelle S. Kennedy and Bingham
Dana LLP were on brief for appellee.

May 26, 1998

BOUDIN, Circuit Judge. Jeannine Bernier appeals from the
district court's grant of summary judgment in favor of The Upjohn
Company. Because we agree with the district court that her suit
was barred by the statute of limitations, we affirm. 
In December 1978, when Bernier was 18 years old, she was
diagnosed with clear cell carcinoma of the vagina. Her physician,
Dr. Robert Knapp, suspected that the cancer might have been caused
by her mother's ingestion of diethylstilbestrol (commonly known as
"DES") while pregnant. During a meeting with Bernier and her
mother, Dr. Knapp asked Bernier's mother whether she had taken DES
while pregnant with Bernier; she replied that she had not.
In January 1979, Bernier underwent a major operation for
treatment of the cancer. Ten months later, on November 1, 1979,
Dr. Knapp wrote Bernier a letter suggesting that she consider
joining a planned class action law suit--presumably against
manufacturers--on behalf of women suffering from complications due
to their mothers' use of DES. Bernier took no action upon
receiving this letter, nor did she discuss the matter further with
Dr. Knapp.
Fifteen years later, in 1994, Bernier consulted an
attorney for the first time, after she heard of a verdict awarding
plaintiffs in a DES case several million dollars. Her attorney
then unearthed a hospital record belonging to Bernier's mother that
bore the annotation "Stilb 25 per schedule." Believing "Stilb" to
signify DES (a glance at the full name of the drug explains why),
Bernier sued Upjohn in the Massachusetts Superior Court on April
10, 1995, asserting theories of negligence and breach of warranty. 
Upjohn removed the case to the district court on grounds of
diversity. 
After discovery, Upjohn moved for summary judgment. 
Upjohn argued that the suit was barred by the statute of
limitations, and also that Bernier could not prove that her mother
had actually ingested DES made by Upjohn rather than by another DES
manufacturer. For reasons recounted below, Bernier did not file a
timely opposition. On June 9, 1997, the district court granted the
motion "for the reasons set forth in [Upjohn]'s memorandum." After
failing to win reconsideration, Bernier now appeals.
Bernier does not dispute that Massachusetts law
prescribes a limitations period of three years. See Mass. Gen.
Laws ch. 106, 2-318 (breach of warranty claims); id. ch. 260, 
2A (negligence claims). Generally, negligence claims arise at the
time of the injury, and breach of warranty claims at the time of
the breach. Cambridge Plating Co. v. Napco, Inc., 991 F.2d 21, 25
(1st Cir. 1993). Admittedly, Bernier's complaint was filed well
over three years after Bernier's injury and the alleged breach. 
Nevertheless, various judicial doctrines temper statutes
of limitations, and Bernier here invokes the Massachusetts
"discovery rule." Under this doctrine, the statute of limitations
does not run against a claim until "an event or events have
occurred that were reasonably likely to put the plaintiff on notice
that someone may have caused her injury." See Bowen v. Eli Lilly
& Co., 557 N.E.2d 739, 741 (Mass. 1990). Put another way, the
statute runs from the point at which a reasonably prudent person in
the plaintiff's position, "reacting to any suspicious circumstances
of which he might have been aware," would have discovered that
another party might be liable for her injury. Malapanis v.
Shirazi, 487 N.E.2d 533, 537 (Mass. App. Ct. 1986). 
This doctrine effectively imposes a duty of reasonable
inquiry on an injured party seeking to avoid the statute of
limitations. As soon as one is on notice of an injury, or at least
one that may have been caused by a third party, one must act
reasonably in considering and investigating this possibility. Cf.Wolin v. Smith Barney Inc., 83 F.3d 847, 852-53 (7th Cir. 1996)
(Posner, C.J.). It is assumed that a reasonable investigation,
backed by discovery, will unearth the necessary facts to support a
claim within the limitations period. If not, the plaintiff can
fall back on an equitable tolling doctrine yet to be discussed. 
Dr. Knapp's letter to Bernier on November 1, 1979, amply
put Bernier on notice that her cancer might have been caused by a
third party. Dr. Knapp wrote: "you have had clear cell carcinoma,
and it is my opinion that this is related to DES exposure in utero
.... Although I am not a lawyer I feel that you certainly have a
claim and since I have taken care of you medically I feel
responsible in offering you any help that I can give to you." It
would be hard to imagine a clearer warning of a likely claim.
Bernier argues that she was not on notice of her claim
because her mother had expressly denied having taken DES, but Dr.
Knapp's letter came after this denial, reasonably alerting Bernier
to the possibility that her mother had been mistaken. Bernier also
says that she read the letter as a form sent to several of Dr.
Knapp's patients, and yet the letter is addressed to Bernier
personally. Whatever her subjective belief, as an objective matter
Bernier was put on notice of a potential claim, and a rational jury
could not find otherwise.
However, Bernier has an alternative statute of
limitations argument, namely, that even a diligent search made in
or around 1979 would not have discovered the vital hospital record
bearing the "Stilb" notation. Under Massachusetts law the doctrine
of equitable tolling suspends a running statute of limitations if
a plaintiff exercising reasonable diligence could not have
discovered information essential to the suit. See Protective Life
Ins. Co. v. Sullivan, 682 N.E.2d 624, 635 (Mass. 1997). 
Massachusetts cases are unclear as to whether plaintiffs who make
no effort to investigate may nonetheless benefit from the doctrine
of equitable tolling. Cf. Wolin, 82 F.3d at 852-53 (suggesting
that they cannot, absent deliberate concealment by the defendant). 
In any event, the record does not suggest that the
"Stilb" document was in some way concealed or otherwise
inaccessible to Bernier in 1979. Cf. Friedman v. Jablonski, 358
N.E.2d 994, 997 (Mass. 1976). Nor does Bernier offer any rationale
for concluding that her attorney could not have discovered it in
1980 as readily as he did in 1994. A party seeking to toll the
statute must at the very least show that the information could nothave been found by a timely diligent inquiry, a showing Bernier
does not even attempt on the existing record.
In her final argument, Bernier asks in effect that we
enlarge the record by considering her belated opposition to summary
judgment. In this regard, she asserts that the district court
erred in denying the motion to reconsider, which was filed together
with her summary judgment opposition two days after summary
judgment was granted. We hold that the district court did not
abuse its discretion, the customary standard applied on review of
such a ruling. Mendez v. Banco Popular de P.R., 900 F.2d 4, 7 (1st
Cir. 1990).
The chronology is important. After extending the
discovery deadline twice, the second time over Upjohn's opposition,
the district court set April 15, 1997, as the due date for the
summary judgment motion and April 29 as the date for an opposition,
with a hearing set for June 9. Upjohn filed on time and the court
then sent out a notice confirming the hearing date. By stipulated
order, Bernier's time to oppose was then extended to May 13. 
Instead of filing her opposition, Bernier filed a motion
on May 12 asking for a month's extra time to oppose the motion and
four more months to complete expert discovery. The court denied
the requests and Bernier's counsel received notice of the denial on
May 27 or 28. Bernier's counsel did not file the opposition with
a request to accept it late, apparently because the opposition was
not yet complete. And on June 9, when the case was called for
hearing, Bernier's counsel did not appear. The court then granted
Upjohn's summary judgment motion and recessed.
Bernier's counsel says that he arrived late and says that
he had telephoned the courtroom clerk to say that he would be late. 
He also says that the burden of other work required the extension
and that he expected it to be granted in light of prior extensions. 
But in all events no opposition to summary judgment was filed until
June 11, together with a motion for reconsideration. In a
thoughtful three-page memorandum, the district court denied the
motion.
Given the latitude normally allowed to district courts on
both scores--schedule setting and reconsideration motions--no claim
of abuse of discretion is even arguable. Contrary to counsel's
suggestion, the district court imposed no unjust "sanction," cf.Robson v. Hallenbeck, 81 F.3d 1, 2-3 (1st Cir. 1996), for the
failure to file the opposition: it simply decided the summary
judgment motion on the merits, taking the movant's facts as
uncontested, just as the governing rules warn will occur absent an
opposition. Fed. R. Civ. P. 56(e); D. Mass. Loc. R. 56.1. 
We cannot accept the notion that the grant of prior
extensions entitles counsel to suppose that any additional
extension will be granted as a matter of course. Not only would
this undermine any kind of procedural discipline, but it is well
known that courts become more reluctant to extend deadlines as
scheduled court proceedings loom. Further, Bernier's counsel did
not even attempt to file the opposition in the period after notice
of the denial was received and before the scheduled hearing.
We add--not in mitigation of counsel's omission but out
of concern for Bernier's feelings--that the belated opposition
would not likely have altered the result on the statute of
limitations defense. On this issue, the main thrust of the
opposition is evidence that by 1979, the doctor who had treated
Bernier's mother during her pregnancy had retired and his records
had been disposed of. Whether the doctor could still have been
interviewed in 1979 is unclear.
However this may be, there is no explanation given why
the due diligence that in 1994 uncovered the "Stilb" notation in
the hospital records would not also have uncovered it in 1979. 
Without such a showing, Bernier could hardly prove that her
mother's use of DES was effectively not discoverable in 1979. 
While counsel's delay thus seemingly had no effect in this case,
lawyers faced with deadlines in the future should treat this case
as a warning.
Affirmed.