**Debra KEACH and Patricia Sage, Plaintiff,**

v.

**U.S. TRUST COMPANY, N.A., et al., Defendants.**

No. 01–1168.

United States District Court, C.D. Illinois, Peoria Division.

Dec. 30, 2002.

---

Dean B. Rhoads, Robert Rhode, Edward Sutkowski, Steven Oates, Sean Anderson, Gregory J. Pals, Sutkowski & Rhoads, Peoria, IL, for Plaintiffs. Debra Keach and Patricia Sage.

Timothy Bertschy, Heyl, Royster, Voelker & Allen, Peoria, IL, Robert Eccles, Shannon M. Barrett, O'Melveny & Myers LLP, Washington, DC, for Defendant U.S. Trust Company, NA, fka U.S. Trust Company of California.

Charles Roth, James Springer, Joseph Z. Sudow, Kavanagh Scully Sudow White & Frederick, Peoria, IL, Michael T. Graham, Nancy Ross, McDermott Will & Emery, Trent P. Cornell, Duane Morris LLC, Chicago, IL, for Defendant Ellen D. Foster, Executrix of the Estate of Thomas S. Foster and as Co–Trustee of the Thomas S. Foster Trust executed on 4/14/94.

Michael T. Graham, Nancy Ross, McDermott Will & Emery, Chicago, IL, for Defendant The Northern Trust Company, an Illinois Corporation as Co–Trustee of the Thomas S. Foster Trust executed on 4/14/94.

Richard J. Pautler, Jennifer Baetje, Thompson & Coburn, St. Louis, MO, for Defendants Robert A. Ostertag, Jr., Terry

P. Cole, Alan R. Dix, Jon Elletson, A. Robert Pellegrino.

James Bailey, Paul Ondrasik, Jr., Steptoe & Johnson, Washington, DC, Roy Davis, David Lubben, Davis & Campbell LLC, Peoria, IL, for Defendants Valuemetrics, Inc.

Mark Casciari, Ian Hugh Morrison, Sari M. Alamuddin, Seyfarth Shaw, Chicago, IL, for Defendant Houlihan, Lokey, Howard & Zukin, Inc.

Charles Roth, James Springer, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendant Stephen P. Bartley.

Stephen Gay, Jeffrey Alan Ryva, Husch & Eppenberger LLC, Peoria, IL, for Defendant Lyle Dickes.

Jeffrey Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Defendant James Freid.

Charles Roth, James Springer, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendant Dale Fujimoto.

John Elias, Robert Riffle, Cynthia Elias, Elias Meginnes Riffle & Seghetti, Peoria, IL, for Defendant William Gehring, Henry Gregory, Ii, John F. Halpin, James Kyle, John Lappegaard, George Mckittrick, Clayton Patino, Jerry Rathmann, W. Thomas Stumb, Mark Swedlund, Leo Vanderlugt, Robert Wilson, Bruce Wright.

Jeffrey Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Defendant Richard Hodgson.

Dean Essig, Washington, IL, For defendant Gregory McAllister.

Charles Roth, James Springer, Joseph Sudow, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendants Michael Norbutas, Frederick Stuber, and for Defendant Ashley Anne Foster, as trustee or agent of the Ashley Anne Foster Irrevocable Trust, and Melvyn R. Regal, individually, as trustee or agent of the Steven Jay Regal Trust, as trustee or agent of the Judi Lynn Regal Trust, and as trustee or agent of the John E. Regal Trust.

## *ORDER*

MIHM, District Judge.

Now before the Court is Defendant Valuemetrics Advisors, Inc.'s ("Valuemetrics") Motion for Summary Judgment. For the reasons set forth below, the Motion for Summary Judgment [# 382] is GRANTED.

## FACTUAL BACKGROUND

The basic factual background has been sufficiently set forth in the prior orders of this Court, and familiarity therewith is presumed. The present motion is brought by Valuemetrics, the financial consulting firm that performed appraisals of F & G stock for the ESOP from 1988 through 1994 and 1996 through 2001, and also provided consulting services to F & G and its Board of Directors in connection with the 1995 ESOP transaction. The matter is now fully briefed and ready for resolution. This Order follows.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material

facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995).

Valuemetrics has moved for summary judgment based on the argument that it was not a fiduciary to the ESOP plan. A fiduciary is one who owes duties to the plan participants and beneficiaries; a fiduciary must exercise care, skill, prudence, and diligence in fulfilling those duties. 29 U.S.C. § 1104(a).

Under ERISA, an individual or entity can become a fiduciary in three ways: (1) being named as a fiduciary in the written plan instrument, 29 U.S.C. § 1102(a); (2) being named and identified as a fiduciary pursuant to a procedure specified in the written plan instrument, 29 U.S.C. § 1102(a)(2); or (3) meeting the definition of a fiduciary contained in 29 U.S.C. § 1002(21):

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

For purposes of addressing this motion, it is undisputed that Valuemetrics was never named as a fiduciary or as an investment manager in the ESOP plan documents. It was never involved in administering the ESOP and had no discretionary authority or control over the ESOP's administration. However, Plaintiffs argue that Valuemetrics was a fiduciary to the ESOP plan under § 1002(21)(A) because it exercised control over plan assets and rendered investment advice with respect to the property of the plan.

■ In this circuit, "a fiduciary is a person who exercises any power of control, management or disposition with respect to monies or other property of an employee benefit fund, or has the authority or responsibility to do so." *Farm King Supply v. Edward D. Jones & Co.,* 884 F.2d 288, 292 (7th Cir.1989), *citing Forys v. United Food & Commercial Worker's International Union,* 829 F.2d 603, 607 (7th Cir. 1987). Under this definition, a showing of authority or control requires "actual deci-

sion-making power" rather than the type of influence that a professional advisor may have with respect to decisions to be made by the trustees or fiduciaries that it advises. *Id.; Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991). Professionals who do no more than provide advice to plan trustees are not fiduciaries. *Pappas*, 923 F.2d at 535; *Laborers' Pension Fund v. Arnold*, 2001 WL 197634, at *3–5 (N.D.Ill. Feb. 27, 2001).

■ Here, Valuemetrics had made annual valuation appraisal reports for the ESOP. On March 16, 1995, Valuemetrics wrote a letter to F & G and the ESOP Administrative Committee proposing an offer to assist the two entities in formulating a stock purchase transaction with the ESOP. However, the ESOP never accepted Valuemetrics' offer. In mid–1995, Valuemetrics was retained, not by the ESOP but by the F & G Board of Directors, to update its valuation analysis, determine an optimal structure for the proposed 1995 ESOP transaction to maximize the value received by selling shareholders, prepare a transaction memorandum for the sale, negotiate with the ESOP trustee, and present the Board of Directors of F & G with an opinion on the fairness of the transaction. The documents produced in connection with the 1995 stock purchase further confirm that Valuemetrics was acting on behalf of the F & G Board and not the ESOP at that time, and Plaintiffs have failed to produce evidence to the contrary.

Valuemetrics was not hired by the ESOP plan to manage the plan assets or make investment decisions, and was not retained by U.S. Trust, the ESOP's trustee, to serve in any capacity in connection with the 1995 stock purchase transaction. To the contrary, Plaintiffs' own expert has acknowledged that Valuemetrics was not the transactional valuation firm. Furthermore, it was U.S. Trust, not Valuemetrics,

that made the final decision and caused the ESOP to purchase the shares of stock, and U.S. Trust had hired the firm of Houlihan, Lokey, Howard & Zukin ("Houlihan") to serve as its own independent financial advisor for the transaction.

The transaction memoranda issued by Valuemetrics explicitly state that while the memoranda are being submitted to the ESOP trustee and the trustee's legal advisors, Valuemetrics is acting as an advisor to the F & G Board of Directors, that the memoranda are being furnished solely to assist the Board of Directors in determining a proposed offering price, and that the ESOP trustee should perform its own independent investigation of the transaction. Furthermore, neither transaction memorandum states any recommendation that the ESOP (or F & G for that matter) should proceed with the transaction. Plaintiffs, although arguing that the written documents do not detail the real scope of Valuemetrics' authority and control or "mutual understanding that Valuemetrics would provide investment advice to the F & G ESOP and/or its fiduciaries," have failed to introduce *evidence* in support of their conclusory argument anywhere in their 50 page response.

There is simply no evidence in the record indicating that U.S. Trust was a mere puppet acting out Valuemetrics' directives in carrying out its duties as trustee. To the contrary, Plaintiffs admit that U.S. Trust initially opined that Valuemetrics' offer price of $24.00 per share "looked somewhat aggressive" and asked Houlihan to prepare an analysis reflecting more conservative revenue projections. Houlihan's analysis, which served as the basis for U.S. Trust's negotiations with F & G, indicated that the single, best point equity value per share of stock was $19.81. On November 7, 1995, representatives of Valuemetrics participated in a telephone call with representatives of U.S. Trust and Houlihan to

discuss their respective views on the valuation of F & G stock. Valuemetrics asserted that F & G was a "superior premium deserving company," while Houlihan maintained that F & G "was a great company, but didn't deserve more than a near median multiple." Following this conference call, U.S. Trust advised F & G that it was not convinced that the offer price of $24.00 per share was supportable, and the purchase of a controlling block of F & G stock at $19.50 per share was ultimately approved. The $19.50 per share price was determined by U.S. Trust as trustee and would not have been recommended by the trustee if Houlihan had not been prepared to issue an opinion supporting that price.

Plaintiffs do not assert that Valuemetrics assisted U.S. Trust in determining this price and have presented no evidence indicating that Houlihan and the trustee simply rubber-stamped Valuemetrics' opinion. In fact, the evidence indicates precisely the opposite, that is that Houlihan and Valuemetrics were on opposite sides of the negotiating table and that Valuemetrics' position did not ultimately prevail. This does not amount to a showing that Valuemetrics' influence so transcended normal bounds as to cause U.S. Trust to abdicate its independent decision-making powers to it or that Valuemetrics was effectively acting for the ESOP in connection with the 1995 transaction.

Plaintiffs point to Valuemetrics' valuation of F & G stock for the year end 1994,

which was issued in final form on May 10, 1995. In that document, Valuemetrics stated, "[w]e recommend that the ESOP purchase or redeem shares at the price of $13.81 per share."[1] Plaintiffs suggest that this is evidence of Valuemetrics' influential role in providing investment advice to the ESOP and controlling its assets, as well as its knowledge that the stock was worth much less than it proposed at the time of the 1995 transaction. However, this suggestion is without merit as the quotation has been taken out of context, is misleading, and leads to a false conclusion. A review of the May 10, 1995, valuation report indicates that Valuemetrics is not actually recommending that the plan take any action to actively purchase shares, but is simply opining on the market value of the shares should they be redeemed by a participant or beneficiary pursuant to a "put" option for the repurchase of such shares at the then fair market value. It is also important to note that the $13.81 figure contained in that valuation is based on a marketable *minority* interest basis, rather than the marketable *control* basis that was used for purposes of the 1995 transaction. The attempt to equate the two methods to suggest that Valuemetrics' valuation increased by nearly $10.00 per share in a matter of months amounts to a comparison between apples and oranges and is equally nonprobative.[2]

Plaintiffs also cite a finding in the Court's November 18, 2002, Order that the

---

1. Plaintiffs also identify similar statements contained in Valuemetrics' valuation reports for other years, which are similarly nonprobative for the reasons discussed with respect to the May 10, 1995, valuation. The Court would also note for the record that each of the annual valuations that Valuemetrics performed on behalf of the ESOP were accompanied by a letter specifically addressed to the Independent Committee of the F & G ESOP (see e.g., attached Exhibit A), which is conspicuously absent from the documents evi-

dencing Valuemetrics' role in connection with the 1995 stock purchase transaction and is further evidence of the lack of merit in Plaintiffs' argument.

2. The same would be true of Plaintiffs attempt to suggest that Valuemetrics misrepresented the value of F & G shares on July 20, 1995, when it privately issued a report to Regal valuing his shares on a minority interest basis to arrive at a value of $11.97 per share for estate planning purposes, and also issued a report to the Board of Directors valuing F &

selection of U.S. Trust as trustee was so inextricably intertwined with the desired end of effectuating the stock purchase transaction that Foster and Regal's act of appointing the trustee essentially exercised de facto control over the plan's assets and management. However, that finding is inapposite to the present motion, as it pertains solely to Foster and Regal and has nothing to do with any conduct by Valuemetrics. The simple fact that Valuemetrics was asked to recommend several well-known institutional trustees to the Board of Directors does not generate a reasonable inference that Valuemetrics went behind the scenes and reached an agreement with U.S. Trust that if appointed as trustee for the ESOP, it would simply carry out Valuemetrics' wishes. In fact, the record reflects that Valuemetrics provided the names of four well-known, institutional trustees who had done ESOP work and F & G made its decision from there.[3]

Thus, Plaintiffs have failed to meet their burden of coming forward with *evidence* indicating that Valuemetrics exercised actual decisionmaking authority or influence over the ESOP or its trustee amounting to such authority. Their failure to do so is fatal to their claim that Valuemetrics was a fiduciary to the ESOP pursuant to § 1002(21)(A)(i).

■ Plaintiffs alternatively argue that Valuemetrics was a fiduciary under § 1002(21)(A)(ii) because it provided investment advice to the ESOP. However, the record does not support a finding that Valuemetrics gave any investment advice to the ESOP regarding the 1995 stock purchase. While Valuemetrics had performed yearly evaluations for the ESOP for a number of years and may have had some fiduciary duty arising with regard to that service, the Department of Labor has issued an advisory opinion indicating that appraising the value of closely-held stock for an ESOP does not constitute the rendering of investment advice within the meaning of § 1002(21)(A). Furthermore, that is not the capacity in which Valuemetrics is charged in this case, as Plaintiffs allege a breach of fiduciary duty in connection with its role in the 1995 stock purchase transaction and do not allege that Valuemetrics breached any fiduciary duty by issuing its annual valuation reports for the ESOP.

It is well-established that a fiduciary can only be liable to the extent that it was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich,* 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); *see also, Brandt v. Grounds,* 687 F.2d 895, 898 (7th Cir.1982). In this respect, the record is devoid of evidence from which one could reasonably infer that Valuemetrics was providing investment advice *to the ESOP* at all in connection with the 1995 stock purchase transaction, let alone that there was some kind of agreement between Valuemetrics and the ESOP that Valuemetrics' advice would be the primary basis for the ESOP's investment decisions; in fact, all of the material evidence, including the July 19, 1995, service agreement pursuant to which Valuemetrics was retained for

G shares on a control basis at $22.35 per share.

**3.** Plaintiffs cite Exhibit 811 for the proposition that Valuemetrics was also picking who these potential trustees would use for attorney legal advisors. However, the plain language of Exhibit 811 supports no such proposition.

Rather, the exhibit merely reveals that Richard May of Valuemetrics, in the course of identifying the four well-known, institutional trustees for consideration also noted his prediction that each of the firms would probably use the law firm of McDermott, Will & Emery.

purposes of the transaction, points the other way and indicates that Valuemetrics was clearly and openly advising the Board of Directors of F & G and not the ESOP at that time.

■ Even assuming that Valuemetrics could possibly be construed to have provided investment advice to the ESOP in connection with the 1995 transaction, "[n]ot everyone who provides investment advice to an ERISA plan is" a fiduciary. *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 849 (7th Cir.1996).

> The statute, 29 U.S.C. § 1002(21)(A)(ii), as glossed by the Department of Labor's regulations, 29 C.F.R. § 2510.3–21, and by the cases, such as *Farm King Supply* and *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1117–20 (9th Cir.1994), requires that the investment advisor, in order to be deemed a fiduciary, with all that that status implies, be rendering advice pursuant to an agreement, be paid for the advice, and have influence approaching control over the plan's investment decisions.

*Id.* Department of Labor regulations further provide that a professional advisor can qualify as a fiduciary when it "[r]enders any advice ... on a regular basis to the plan pursuant to mutual agreement ... that such services will serve as a primary basis for investment decisions...." 29 C.F.R. § 2510.3–21(c)(1)(ii)(B).

The Court has previously found as a matter of law in this Order that there is no *evidence* of record from which a reasonable fact finder could conclude that Valuemetrics exercised influence approaching actual control over the ESOP's investment decisions in relation to the 1995 stock purchase transaction. Accordingly, even assuming that Plaintiffs could otherwise demonstrate that Valuemetrics provided investment advice pursuant to an agreement with the ESOP in connection with the 1995 transaction (and this record does

not support such a finding), their argument under § 1002(21)(A)(ii) necessarily fails.

It is undisputed that Valuemetrics had a long-standing relationship with F & G, as well as the ESOP, and played a pivotal and active role in advising the Board of Directors and structuring the proposed stock offer to the ESOP in 1995. Plaintiffs are also correct that Valuemetrics' actions in this case were of a slightly different nature than Houlihan's and should be subject to closer scrutiny because of the fact that Valuemetrics switched sides, so to speak, and began advising the F & G Board of Directors rather than the ESOP for purposes of the 1995 stock purchase transaction. However, while Plaintiffs may have demonstrated that Valuemetrics advice amounted to the exertion of substantial influence *over the Board of Directors of F & G* in connection with the 1995 transaction, Valuemetrics' liability is contingent on its having breached a fiduciary duty owed *to the ESOP*, and its switching sides to advise the Board of Directors does not in and of itself transform Valuemetrics into a fiduciary to the ESOP for purposes of the 1995 stock purchase transaction. Plaintiffs seem to have lost sight of the fact that this ERISA action is not a crusade to right all wrongs or a forum to avenge what might be construed as a conflict of interest or breach of professional ethics; such issues are questions that cannot be resolved here, but must be left for a different day in a different forum.

Even when the record is construed in the light most favorable to Plaintiffs, they have nevertheless failed to set forth evidence from which a finder of fact could reasonably conclude that Valuemetrics exercised influence approaching actual control over the ESOP's investment decisions in relation to the 1995 stock purchase transaction, provided investment advice in connection with the 1995 transaction, or

was otherwise a fiduciary to the ESOP in connection with the 1995 transaction. Valuemetrics is therefore entitled to summary judgment in its favor on the Sixth Claim for Relief in Plaintiffs' First Amended Complaint.[4]

## CONCLUSION

For the reasons set forth above, Defendant Valuemetrics' Motion for Summary Judgment [# 382] is GRANTED. Valuemetrics is now TERMINATED as a party to this action.

---

4. The Court would also note for the record that Plaintiffs' response contains several assertions of fact suggesting that Valuemetrics provided investment advice to the ESOP in connection with the 1997 stock purchase transaction. However, Plaintiffs' First Amended Complaint contains no allegations of breach of fiduciary duty or liability by Valuemetrics in connection with the 1997 transaction, and they do not make any such argument in their response. Nor have Plaintiffs filed any motion to amend to conform the pleadings to evidence produced in discovery. Therefore no claim against Valuemetrics for breach of fiduciary duty in connection with the purchase of shares by the ESOP in 1997 is part of this case. Thus, to the extent that Plaintiffs make reference facts regarding Valuemetrics' conduct in 1997, such assertions are not relevant to the only claim in this case, which concerns its status in 1995.