**Jack A. RUSH, Plaintiff–Appellant,**

v.

**MARTIN PETERSEN COMPANY, INC., Defendant–Appellee.**

No. 95–2727.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1996.

Decided May 10, 1996.

Christa A. Reisterer, argued, Jeffery R. Brodek, Demark, Kolbe & Brodek, Racine, WI, for Plaintiff–Appellant.

Thomas B. Hartley, argued, Paul B. Wokwicz, Guttormsen, Hartley & Guttormsen, Kenosha, WI, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and TERRANCE T. EVANS, Circuit Judges.

TERRANCE T. EVANS, Circuit Judge.

Jack Rush was hired by the Martin Petersen Company as an office manager in 1962. The Martin Petersen Company was a small organization, consisting at that time of six or seven sheet metal workers, Vice President Earl Cowen, and the president of the company, Martin Petersen, Jr. In 1966, the Sheet Metal Workers' National Pension Fund was established, and the company began to contribute to it on behalf of its unionized sheet metal workers. As office manager, Rush was responsible for the administrative work that the pension plan entailed. His duties included the preparation of monthly reports listing all employees in the pension plan and the number of hours they worked, in order to determine how much to contribute to the pension plan on behalf of each worker. Rush did everything but sign the checks; once the remittance amounts were calculated, the checks were presented for signature to Cowen or Petersen.

The company contributed to the fund not only in the names of the sheet metal workers, but also on behalf of Rush, who was neither a sheet metal worker nor a member of the union. These payments continued until 1986, when the pension fund informed the company that payments on behalf of non-union employees had been made erroneously; only union members were eligible to participate in the plan. The company was informed that it could choose to either file an application for a class-wide exception to the plan's eligibility requirements, or request a refund of all erroneous contributions to the fund. The company chose to request a refund of the contributions made on behalf of Rush since 1966. Eventually, a refund of $30,436 was received from the plan.

In 1972, the Martin Petersen Company established a profit-sharing plan for its non-union employees and began to make contributions to the new plan on Rush's behalf. When Rush retired from the company in June of 1987, he received a lump-sum payment of about $96,000 from the profit-sharing plan.

Dissatisfied with his $96,000 retirement benefit, Rush filed a complaint in the Eastern District of Wisconsin in September of 1992. The complaint raised only one claim: breach of fiduciary duty. This claim was based on an alleged oral promise made in 1966. The case went to trial in 1995.

Rush, during the trial, gave a great deal of contradictory testimony. One thing he was sure of, however, was that sometime in 1966 someone at the Martin Petersen Company told him he would receive a retirement benefit in the form of an annuity and this benefit was somehow related to the pension plan. He first said this promise had been made by Cowen. This assertion was the basis for a company move to get out of the case on

summary judgment, in part because Cowen had died, and Rush could not base a claim on an alleged oral agreement with a deceased employee. Rush then said it may have been Petersen who made the promise, and he later testified at the trial that both men were present when the promise was made. After sorting through this testimony, and looking to the evidence of consistent benefit payments over thirty years, Chief Judge Stadtmueller concluded that the company indeed intended Rush to receive some form of retirement benefit, but that the form of that benefit had not been specified.

It is difficult to determine exactly what harm Rush thinks he has suffered. He cannot claim that he was harmed by being included in the profit-sharing plan instead of the pension plan. The benefit he received under the profit-sharing plan was a lump-sum cash payment of $96,000. The benefit to which he would have been entitled under the union pension plan was a stream of future payments with a present cash value of about $30,000. He cannot say he was harmed by being given cash instead of the allegedly promised annuity, for he has at all times been free to take his cash and use it to purchase the annuity for which he has expressed a preference. He can't really argue that the company misled him by making payments to the pension plan on his behalf, because he was the Martin Petersen employee in charge of administering the plan.

■ Fortunately, we don't need to figure out the precise nature of the claim Rush is trying to wring from the facts of this case. As the district court found, Rush's claim for breach of fiduciary duty is barred by ERISA's three-year statute of limitations. 29 U.S.C. § 1113(2). The statutory period begins to run, not when a violation or breach occurs, but when the person harmed acquires "actual knowledge" of the occurrence. We have defined "actual knowledge" in this context as knowledge of the "essential facts of the transaction or conduct constituting the violation," and have explained that this means it is "not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality." *Martin v. Consultants & Admin-*

*istrators, Inc.,* 966 F.2d 1078, 1086 (7th Cir. 1992).

■ Chief Judge Stadtmueller found that Rush had actual knowledge of the "essential facts" in 1987. We review this factual finding with deference to the district judge, who had the opportunity to observe the witnesses firsthand, to assess their credibility and weigh their testimony. His finding will be disturbed only if clearly erroneous. *Kavanagh v. Berge,* 73 F.3d 733, 735 (7th Cir. 1996). One of the facts the district judge had before him when making his determination is that payments to the plan on behalf of Rush ended in October of 1986, after the company received the letter from the fund about the erroneous contributions. As the person who calculated the monthly payments to the fund, it would have been difficult for Rush to avoid knowing that contributions were no longer being made on his behalf. Another piece of evidence considered by Chief Judge Stadtmueller was a letter to Rush from the pension fund dated October 19, 1987. The letter informed Rush that he was not eligible to participate in the plan, that he might have been eligible had the company petitioned for special class acceptance, that the company had not done so, and that the company's other option was to request a refund. In light of this evidence, we agree with Chief Judge Stadtmueller that Rush had actual knowledge of the essential facts giving rise to the alleged violation at the latest in October of 1987. He did not file his complaint until September of 1992. He waited five years. The statute gave him three. The district judge was correct to hold that this claim is time-barred, and his decision is

AFFIRMED.