**Howard R. MONTGOMERY, for himself and for all others similarly situated and for Aetna Plywood, Inc. Profit Sharing Plan as successor to Aetna Plywood, Inc., Employee Stock Ownership Plan, Nominal Defendants, Plaintiffs,**

**v.**

**AETNA PLYWOOD, INC., a Delaware corporation, Jeffrey Davis, a trustee of Aetna Plywood, Inc., ESOP, John Francione, a trustee of Aetna Plywood, Inc., ESOP, Peter John, a trustee of Aetna Plywood, Inc., ESOP, and Peter Thomsen, a trustee of Aetna Plywood, Inc., ESOP, Defendants.**

**No. 95 C 3193.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 2, 1997.

Clinton A. Krislov, Sara Jane Weisenthal, Lisa Margaret Gotkin, Krislov & Associates, Ltd., Chicago, IL, for Howard R. Montgomery.

Michael J. Howlett, Jr., Allan Tracy Slagel, William M. Ejzak, Shefsky, Froelich & Devine, Ltd., Chicago, IL, Dean A. Dickie, Kathleen Helen Klaus, D'Ancona & Pflaum, Chicago, IL, for Aetna Plywood, Inc. and Jeffrey Davis.

Dean A. Dickie, Mark A. Brand, Matthew Robert Wildermuth, Kathleen Helen Klaus, Brand & Novak, Ltd., Chicago, IL, for John Francione.

C. Barry Montgomery, Lloyd E. Williams, Jr., Williams & Montgomery, Chicago, IL, for Peter John and Peter Thomsen.

Richard Welton Culver, Richard W. Culver, Ltd., Schaumburg, IL, for Jay R. Frischkorn.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

In this class action, former participants in the Aetna Plywood, Inc. Employee Stock Ownership Plan (the "ESOP") claim that defendants breached their fiduciary duties when defendant Aetna Plywood, Inc. ("Aetna Plywood") repurchased its stock from the ESOP for an allegedly undervalued price. The individual defendants were all trustees of the ESOP during the pertinent time period. In a proposed amended complaint, they are also alleged to have been directors of Aetna Plywood during the pertinent time period. Counts I and II assert breach of fiduciary duty claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Count I alleges a violation of 29 U.S.C. § 1104(a)(1) which requires that investments be made in the interests of the participants and beneficiaries and in a prudent manner. Count II is a claim for a violation of 29 U.S.C. § 1106

which prohibits certain self-dealing. Defendant Davis, one of the trustees, owned all shares of Aetna Plywood not owned by the ESOP and became the sole owner of Aetna Plywood upon the repurchase of the ESOP stock. Plaintiffs move to amend their complaint to add a claim under Delaware law that defendants' conduct, in their role as directors of Aetna Plywood, also constituted a breach of their fiduciary duty to the shareholders of the corporation. Defendants oppose the motion to amend and move for summary judgment on the ERISA counts on the ground that the claims are untimely under ERISA's statute of limitations.

Summary judgment will be considered first. The parties do not dispute the pertinent underlying facts. On April 24, 1992, the trustees of the ESOP sent a letter to the ESOP participants.[1] The letter informed participants that all shares owned by the ESOP would be allocated to individual accounts of participants by the end of fiscal year 1992. The trustees stated that they "believe[d] it would be prudent" to thereafter convert the retirement funds from company stock to more diversified and liquid investments. The trustees further stated that they were "considering" making this change. It was also stated:

> The value of Company stock at October 31, 1991 was $85.75 per share. There will be a more current valuation by an independent appraisal firm before the conversion from Aetna stock to more diversified and liquid investments can be completed, and you would be advised as to that value. On October 31st, 1992 there will be a final distribution of shares to your account, and then following a final valuation those shares would then be converted to cash and transferred to the Profit Sharing Plan at [Lake Shore National Bank] for investment.

The participants were also informed that, "if" all the ESOP's shares are repurchased by Aetna Plywood, the only remaining common stock would all be owned by the Davis family.

The letter closed by stating:

> This would be a major financial transaction by the Company, and as such, we would like any input and/or opinions concerning this matter. Therefore, we have enclosed a survey form and a self-addressed stamped envelope for your completion. So that this transaction may be completed in a timely fashion, please respond within ten (10) days. We look forward to your response.

As of April 1992, named plaintiff Howard Montgomery was a participant in the ESOP, but a former employee of Aetna Plywood working at a competitor. At his deposition, Montgomery testified that he was immediately suspicious, primarily because he distrusted the people who ran the company and the ESOP. He was also suspicious that there would be a new appraisal because the $85.75 figure was within a "reasonable window" of the valuation that had been given for years. Montgomery apparently meant he was suspicious that a new appraisal would propose an even lower valuation; he did not testify that he was suspicious that the $85.75 valuation was too low.

The shares were purchased for $85.75 per share on June 12, 1992. No evidence is presented as to any further communications with the participants between April 24 and June 12. Neither is any evidence presented as to any communication after June 12 informing participants that the transaction had been completed. As mentioned in the April 24 letter, a current appraisal was obtained. Zweifler Financial Research's appraisal, dated June 1, 1992, values the stock at $85.00 per share. There is no evidence that participants were informed that the appraisal had been completed, nor any evidence that they were ever informed of the results of any appraisal. The corporate board of Aetna Plywood did not approve the transaction until August 10, 1992, retroactive to June 12.[2]

---

1. No information is provided regarding whether all members of the class received a copy of this letter in April 1992.

2. Although not provided as part of the summary judgment motion, in response to the motion to amend, defendants provide a copy of a May 5, 1992 resolution of the Aetna Plywood board of directors "deem[ing] it to be in the best interests of the Corporation" to purchase the ESOP shares "at a price per share not less than $85.75." Again, there is nothing to indicate that this infor-

No evidence is presented as to when the ESOP trustees formally approved the transaction.

Counsel for Montgomery, now counsel for the class, obtained a copy of the Zweifler appraisal in February 1995. The present lawsuit was filed on May 30, 1995.

The parties agree that the following ERISA provision contains the applicable statute of limitations.

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

■ The principal issue to resolve is when plaintiffs had actual knowledge of the breach of fiduciary duty. Receipt of the April 24, 1992 letter was more than three years prior to the May 30, 1995 filing of this action.

Defendants do not rely on any other event that may have occurred prior to May 27, 1992.[3] If actual knowledge occurred upon reading the April 24 letter, claims by participants who read that letter no later than May 26, 1992 would be untimely.[4]

■ Constructive knowledge or suspicion is an insufficient basis for invoking § 1113(2); there must be "actual knowledge." *Rush v. Martin Petersen Co.*, 83 F.3d 894, 896 (7th Cir.1996); *Radiology Center, S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1222 (7th Cir.1990). *See also Wolin v. Smith Barney Inc.*, 83 F.3d 847, 853 (7th Cir.1996) (*dictum*).[5] "To charge [plaintiff] with actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues." *Radiology*, 919 F.2d at 1222 (quoting *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir.), *cert. dismissed*, 483 U.S. 1057, 108 S.Ct. 33, 97 L.Ed.2d 821 (1987)). "Actual knowledge" has been defined as "knowledge of the 'essential facts of the transaction or conduct constituting the violation.'" *Rush*, 83 F.3d at 896 (quoting *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1086 (7th Cir.1992)). However, "it is 'not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality.'" *Id.* Whether a fact is "essential" or just an additional detail "will usually turn in part on the complexity of the underlying factual

mation was ever conveyed to any of the participants prior to May 27, 1992. Instead, since part of the document is redacted, presumably the document was treated as confidential and not disclosed to participants prior to the present litigation.

**3.** May 30, 1995 was the Tuesday after Memorial Day. Thus, filing on that date would also be timely for a limitation period that would otherwise have ended May 27, 28, or 29, 1995. Fed. R.Civ.P. 6(a).

**4.** The parties do not discuss what the effect would be of finding that named plaintiff had actual knowledge prior to May 27, 1992, while also finding that other members of the class did not have actual knowledge until later. As discussed in the opinion granting class certification, any participant may bring a claim for the entire amount of any undervaluation—this is not a case where each class member would have a distinct

and separate claim for his allocable amount. *See Montgomery v. Aetna Plywood, Inc.*, 1996 WL 189347 *3 (N.D.Ill. April 16, 1996). Since the undisputed facts show Montgomery did not have actual knowledge prior to May 27, 1992, this issue need not be resolved.

**5.** Although both parties cite to *Wolin*'s extensive discussion of § 1113, *Wolin*'s discussion of § 1113's actual knowledge requirement is actually *dictum*. Plaintiffs in that case conceded that they had actual knowledge in 1990, more than three years prior to the filing of the case. 83 F.3d at 853. The issue in *Wolin* was the application of the final clause of § 1113 as to the six years after discovery in the case of "fraud or concealment." *See Wolin*, 83 F.3d at 853–56. Plaintiffs in the present case do not rely on the "fraud or concealment" provision.

transaction, the complexity of the legal claim and the egregiousness of the alleged violation." *Martin,* 966 F.2d at 1086.

■ As stated in the statute, it is "knowledge of the breach or violation" that is key. 29 U.S.C. § 1113(2). *See also Martin,* 966 F.2d at 1086. Where the breach of duty precedes harm or injury, and there is actual knowledge of the breach, the statute still runs from the time of knowledge of the breach, not from the time the plaintiff gains actual knowledge of injury. *Larson v. Northrop Corp.,* 21 F.3d 1164, 1171 (D.C.Cir. 1994). *See also Wolin,* 83 F.3d at 853, 855 (*dictum*). Defendants argue that knowledge (acquired by reading the April 24 letter) that defendants were planning to engage in the challenged transaction starts the clock running because that is knowledge of the breach, whereas consummating the transaction on June 12 was merely the date injury occurred. The present case, however, is distinguishable from those cases where the breach preceded the harm. In *Larson* and *Wolin,* and the cases discussed therein, the statute began running when transactions, which constituted breaches of duty, were consummated. In those cases, injury followed at a later date when the investments involved in the transactions began to lose money. Here, no transaction was consummated until June 12.

Even if the decision to engage in a transaction at a future date can mark the beginning of the statutory period for a § 1104 or § 1106 violation,[6] reading the April 24 letter would not mark the beginning of the statutory period. The April 24 letter only informed participants who read it that the trustees were considering the transaction. There is no evidence that any plaintiff was informed, prior to May 27, 1992, that the trustees had approved the transaction. Also, the letter informed the participants that a price of $85.75 was being considered, but that another appraisal would be conducted before a price would be determined. The new appraisal is dated June 1 and there is no evidence that any participant was ever informed

of the completion or results of the appraisal then or prior to that date. There can be no knowledge of a violation without knowledge of the actual transaction price. Selling the stock is not a violation; only selling the stock at a price below its fair value can constitute a violation. This is even true of the § 1106 violation, which contains an exception for self-dealing in employer securities as long as the sale is for "adequate consideration" and other requirements are satisfied. *See* 29 U.S.C. § 1108(e). Moreover, even if class members had knowledge by May 26, 1992 that the sale would be at the $85.75 price, there is no evidence that Montgomery or any other class member had knowledge that the shares were actually worth more. *Cf. Harris Trust & Savings Bank v. Salomon Brothers, Inc.,* 1996 WL 341365 *19 (N.D.Ill. June 18, 1996). As the Zweifler appraisal and plaintiffs' complaints about it show, determining the value of the shares required certain knowledge of corporate assets and a certain level of analysis. There is no evidence that Montgomery, or any other class member, had such knowledge. To the contrary, Montgomery's deposition indicates it was his understanding in April 1992 that $85.75 was a fair value and he was afraid the ESOP shares would be repurchased at a lower price. Additionally, as to the § 1106 claim, the letter mentions the Davis family owned the other shares but does not mention that defendant Davis was one of the trustees or that he was participating in the ESOP's decision on the sale. While Montgomery apparently was aware Davis was a trustee, there is no evidence that other class members also had such knowledge.

For the foregoing reasons, Montgomery and the other class members did not have actual knowledge of a breach of fiduciary duty prior to May 27, 1992. Therefore, their ERISA claims are not untimely pursuant to § 1113(2). It is therefore unnecessary to consider plaintiffs' alternative argument that there is also a derivative claim on behalf of the ESOP[7] and that only the six-year period

---

**6.** Section 1104 refers to an ERISA fiduciary "discharg[ing] his duties" with care and prudence. Section 1106 prohibits "caus[ing] the

plan to engage in a transaction" that is prohibited.

**7.** There has never been a determination that this case may proceed as a derivative action on be-

can apply to that claim. *See Struble v. New Jersey Brewery Employees' Welfare Trust Fund,* 732 F.2d 325, 338–39 (3d Cir.1984).

Plaintiffs move to amend their complaint to add a fiduciary duty claim under Delaware corporate law. They contend that defendants, as directors of Aetna Plywood, breached their fiduciary duties to shareholders by repurchasing the ESOP stock at a low price, thus favoring those shareholders (the Davis family) who owned the other stock. Defendants oppose the amendment on a number of grounds. They contend they would be unduly prejudiced by permitting an amendment at this time. They also contend that a cognizable claim is not stated because (a) the claim is untimely; (b) any injury to plaintiffs was caused by the sale of the shares (which was done by the trustees), not by the purchase of the shares; (c) there is no fiduciary duty owed to shareholders to repurchase stock at the highest possible price; and (d) no pre-filing demand was made on the directors as is required for a derivative suit.

■ Defendants' contention that they would be unduly prejudiced by adding the claim this late in the litigation is without merit. The key issue will still be whether a fair price was paid for the shares. To the extent there are any pertinent facts regarding the directors' conduct not yet disclosed in discovery, they would be facts within the control of defendants. It would be plaintiffs who might be prejudiced by undisclosed facts, not defendants. No additional discovery will be permitted by plaintiffs.

It is alleged that the directors approved the purchase for the $85.75 price and that this price was less than the fair market value. It is also alleged that the trustees of the ESOP and directors of the corporation were the same people and that defendant Davis, one of the directors, was the one that benefitted from the transaction.

■ Defendants do not dispute that the amendment would relate back to the original filing of this action on May 30, 1995. Both sides agree that the three-year limitation period contained in 10 Del.Code § 8106 would apply. Defendants present a copy of a corporate resolution dated May 5, 1992 deeming it to be in the best interest of the corporation to repurchase the stock at a price no less than $85.75. As previously set forth, though, the transaction was not consummated until June 12, 1992, an action that was subsequently confirmed by the directors in a resolution dated August 10, 1992. The June 12, 1992 consummation of the sale, not the May 5, 1992 resolution, begins the running of the limitation period. *See Dofflemyer v. W.F. Hall Printing Co.,* 558 F.Supp. 372, 379 (D.Del.1983) (statute on breach of fiduciary duty claim began to run when merger was consummated, not when directors took prior action); *Kaufman v. Albin,* 447 A.2d 761, 763–64 (Del.Ch.1982) (statute on breach of fiduciary duty claim began to run when tender offer was accepted, not at earlier date when directors passed resolution approving tender offer). The May 30, 1995 filing of this action was within three years after the June 12, 1992 completion of the transaction.

■ Defendants also challenge the claim on its merits.

> When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain.... The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts.

*Nixon v. Blackwell,* 626 A.2d 1366, 1376 (Del. 1993) (quoting *Weinberger v. UOP, Inc.,* 457 A.2d 701, 710 (Del.1983)). The directors have a duty to abstain from unfairly favoring certain shareholders over other shareholders. *Id.* at 1375–76. This duty is owed directly to the shareholder. *Alta Health Strategies, Inc. v. Kennedy,* 790 F.Supp. 1085, 1096–97 (D.Utah 1992). Particularly where the directors have more pricing information than the shareholders or where self-dealing is involved, it will be a breach of fiduciary duty to repurchase stock for other than the fair market value, absent a good faith belief that the

half of the ESOP. *See Montgomery,* 1996 WL 189347 at *4.

price represented fair market value. *Id.; Nixon,* 626 A.2d at 1375–76. *See also Polk v. Good,* 507 A.2d 531, 536–37 (Del.1986).

Since, according to the allegations, the transaction involved favoring certain shareholders, including one of the directors, over the ESOP and purchase of the ESOP shares for substantially less than fair market value, a violation of fiduciary duty is stated. Since the duty is owed directly to the shareholder, the claim need not be brought as a derivative action on behalf of the corporation. Therefore, plaintiffs were not required to make a pre-filing demand upon the directors. To the extent the claim is derivative as to the ESOP, a pre-filing demand was made upon defendants as trustees.

Leave to file the amended complaint will be granted. Apparently for purposes of consistency in numbering or otherwise, the amended complaint again includes the Count III unjust enrichment claim that was previously dismissed. That claim will be dismissed again.

IT IS THEREFORE ORDERED that defendants' motions for summary judgment [163, 167] are denied. Plaintiffs' motion for leave to file their third verified amended complaint [168] is granted. Count III of the third verified amended complaint is dismissed. Defendants shall answer the remaining allegations of the third verified amended complaint by January 3, 1997. In open court on January 27, 1997 at 9:15 a.m., the parties shall submit an original and copy of a joint final pretrial order in full compliance with Local Rule 5.00.