**C. Richard BROWN, Plaintiff,**

v.

**AMERICAN LIFE HOLDINGS, INC., C. Harold Brown, Robert Clark, Jerome Crowley, Donald F. Gongaware, and Rollin M. Dick, and Bank One, Indianapolis, N.A., Defendants.**

**No. 4–96–CV–9087 1.**

United States District Court, S.D. Iowa, Central Division.

Nov. 18, 1998.

Nicholas v. Critelli, Jr., Critelli & Associates, Des Moines, Iowa, for plaintiff.

Mark A. Casciari, Robert P. Flanagan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Thomas N. Kamp, Lane & Waterman, Davenport, IA, for defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment filed on August 17, 1998. After receiving Plaintiffs Response and Defendants' Reply, hearing oral argument, and reviewing the applicable law, this Court grants partial summary judgment for Defendants and grants partial summary judgment for Plaintiff, although no cross-motion has been filed with the court.

This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Plaintiff filed his original Complaint on December 12, 1996, alleging failure to furnish information as required under 29 U.S.C. § 1024(b)(4) (enforceable under 29 U.S.C. § 1132(c)(1)(B)). Plaintiff tiled his [First] Amended Complaint on February 18, 1998, adding "Count II" alleging two additional claims: (1) breach of fiduciary duty under 29 U.S.C. §§ 1104(a)(1)(A) & (B) by "taking an unreasonably long time" to either terminate an Employee Stock Ownership Plan ("ESOP") and distribute the funds or to roll the funds into the existing Statesman 401(k) Plan; and (2) breach of fiduciary duty under 29 U.S.C. §§ 1104(a)(1)(A) & (B) by failing to diversify the investments into higher yielding

investments. Plaintiff filed his [Second] Amended Complaint on July 14, 1998, in which he joined additional Defendants. The Court exercises federal question jurisdiction over these claims under 29 U.S.C. § 133 1 and venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3). Defendants request summary judgment on Plaintiffs three claims.[1]

## I. Facts

The following facts, taken from the record as a whole, are either undisputed or viewed in the light most favorable to the nonmoving party. *See Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). Defendant American Life Holdings, Inc. ("American Life") was formerly known as The Statesman Croup, Inc. ("Statesman"). Statesman operated an ESOP, an employee benefit plan under ERISA.[2] Plaintiff C. Richard Brown ("Plaintiff") was a participant in the ESOP, and Statesman was the ESOP sponsor. Defendants C. Harold Brown ("Brown"), Robert Clark ("Clark"), Jerome Crowley ("Crowley"), Donald Gongaware ("Gongaware"), and Roland Dick ("Dick") were members, at various times, of the Administrative Committee, which was the ESOP administrator. Defendant Bank One, Indianapolis, N.A. ("Bank One") was the ESOP trustee.

The Statesman ESOP was established on January 1, 1970, and was maintained continuously until January 2, 1996, when it was merged into the Statesman Savings Plan 401(k) ("401(k) plan"). On September 29, 1994, Conseco Capital Partners II, L.P. ("Conseco") acquired a controlling interest in Statesman, tendering cash for all Statesman stock, and on that date, or shortly after, the ESOP received cash for its stock holdings. Sometime between September 29, 1994 and October 20, 1994, John Matovina ("Matovina")[3] advised Bank One representatives that the continuing existence of the ESOP was uncertain and that it might be terminated or merged into another tax-qualified plan, such as the 401(k) plan. On or about October 13, 1994, Plaintiff attended a meeting at which he was told that the ESOP assets were being invested in U.S. Treasury bills. At about that time, in mid-October 1994, Bank One did invest approximately 90 percent of the ESOP cash in U.S. Treasury bills to mature on April 20, 1995. The remaining cash was invested in a Bank One money market savings fund. On or about December 15, 1994, no further employer contributions were made to the ESOP.

On April 20, 1995, Bank One re-invested approximately 90 percent of the ESOP cash in U.S. Treasury bills to mature on August 17, 1995. The remaining cash was again invested in a Bank One money market savings fund. From August 17, 1995

---

**1.** It appears to the Court that Plaintiff attempts to raise various additional fiduciary claims in his Brief and Argument in Resistance to Motion for Summary Judgment. If Plaintiff wanted to bring additional claims aside from those stated in his (Second) Amended Complaint, he should have filed a motion to amend his Complaint. Pursuant to the Federal Rules of Civil Procedure, Plaintiff bears the responsibility for setting forth a short and plain statement of the claims showing that he is entitled to relief. Fed.R.Civ.P. 8(a)(2). This is not a heavy burden requiring detailed factual allegations. *See Hungate v. United States*, 626 F.2d 60, 62 (8th Cir.1980). "While the federal courts should remain sensitive to the liberal federal rules of pleading, they should remain equally sensitive to the mandate of Rule 1 to 'secure the just, speedy, and inexpensive determination of every ac-

tion.' " *Id.* (quoting Fed.R.Civ.Pro. 1). This Court exercises its discretion and refuses to recognize any claims outside of those set forth in Plaintiffs [Second] Amended Complaint. Plaintiff has had every opportunity to properly plead his claims.

**2.** Definitions for subchapter one of ERISA can be found at 29 U.S.C. § 1002 (including definitions of benefit plan, participant, sponsor, trustee, and administrator). The ESOP's definitions can be found in Article III of the amended and restated plan and trust document.

**3.** Matovina was Vice President and Treasurer of American Life and served as the recording secretary for the Administrative Committee during the relevant time period.

until January 2, 1996, when the ESOP was merged into the 401(k) plan, all of the ESOP assets were invested in a Bank One money market savings fund.

The Administrative Committee met formally at least once a year, usually in December. The members of the Administrative Committee were appointed annually by the Board of Directors of the plan sponsor and were removable at will, as set forth in § 4.1 of the ESOP. The Administrative Committee, composed of Brown, Clark, and Crowley, ceased to function after the merger on September 29, 1994. The new Board of Directors of Statesman did not appoint Gongaware and Dick as new replacement members of the Administrative Committee until January 1, 1995. Gongaware and Dick were part of the senior management of Conseco and were also on the new Board of Directors for Statesman.

On February 2, 1996, Plaintiff sent a letter to Matovina requesting certain ESOP-related documents. Plaintiff specifically requested copies of "all documents pertaining to The Statesman Group, Inc. ESOP plan" including "the latest [presumably 1995] annual report, the Trust contract, minutes of administrative meetings ... resolutions ... written communications between the company, the administrative committee and the trustee ... and any other documents under which the plan was established or is operated." Plaintiff received a copy of the ESOP sometime within two weeks of sending his letter. The Assistant General Counsel for Conseco responded in writing to Plaintiffs letter on February 14, 1996, stating, "[w]e have requested that John Matovina provide *us* with a copy of the latest annual report for the ESOP" (emphasis added), adding that he did not think any documentation outside of the plan itself need be provided to Plaintiff under ERISA. Nothing further was provided to Plaintiff at this time.

Plaintiff, with assistance of counsel, submitted a second written request for information on September 13, 1996, and asked Matovina, Crowley, Clark, and Brown to provide him with: minutes of the meetings of the Plan's Administrative Committee, the latest annual report of the plan, the trust contract, all resolutions pertaining to the plan, copies of the plan's 5500 tax forms, a detailed explanation concerning the Committee's decisions to maintain the plan and retain plan funds in low-yielding investments, and all filing and correspondence to and from the Internal Revenue Service and the Department of Labor. In his October 17, 1996 response, Matovina provided summary annual reports for 1994 and 1995, an annual report on Form 5500 for the prior five years, audited financial statements for the prior five years, and a copy of the amended and restated plan and trust document.

## II. Legal Standard

The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. See *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. See Fed. R.Civ.P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; Anderson, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis added). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. See *id* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." Id.

### III. Discussion

#### A. Failure to Furnish Information Claim

■ Plaintiff argues that Defendants violated 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1) by failing to provide him with all of the documents he sought within thirty days of his written requests. Defendants respond that they provided Plaintiff with all documents as required and are entitled to summary judgment as a matter of law because Plaintiff cannot show harm or prejudice.

In order to decide whether Defendants are entitled to summary judgment, the Court must decide whether the failure of Defendants to provide all of the documents requested by Plaintiff is a violation of § 1024(b)(4). The plain language of the text is the starting point in every case involving statutory construction. See *Adams v. Apfel*, 149 F.3d 844, 846 (8th Cir.1998). The statute itself states:

> The administrator shall, upon written request of any participant or beneficiary,

furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). The plain language of the statute requires certain specified documents, such as the latest updated summary plan description, the latest annual report, and the trust agreement, be provided when they are requested in writing. In addition, the statute's final clause provides for the release of "other instruments under which the plan is established or operated." The plain language does not require that a participant be provided with every document that is requested, nor is there anything in the statute that prohibits an administrator from providing the minimum required under the statute.

The evidence is clear that Plaintiff received a copy of the ESOP (as amended and restated) within two weeks of Plaintiffs February 2, 1996 letter.[4] Additionally, Defendants provided a copy of the "latest" [1995] annual report on or about October 17, 1996. This document, however, was provided outside of the requisite thirty-day period. See 29 U.S.C. § 1132(c).[5] Defendants did not provide a separate copy of the trust document, but the uncontested evidence is that no separate document existed; the trust document was part of the plan. Also, Defendants did not furnish a new post-acquisition summary plan description. There is no evidence in the record, however, that Plaintiff specifically requested such a summary plan description, nor is there any evidence that Plaintiff contested Defendants' statement that no new post-acquisition summary plan description existed.[6] Therefore, the Court finds that the only document specifically re-

---

**4.** It is not clear from the record exactly when or how Plaintiff received the copy.

**5.** The text of the section can be found *infra* at p. 890.

**6.** The Court does not need to decide whether a document specifically listed under § 1024(b)(4) must be provided under a general request for information if not specifically requested because there is no statement in the record that such a summary plan description

quested by Plaintiff that was not provided in a timely manner was the "latest" [1995] annual report. Defendants' failure to provide the other requested documents, such as the minutes, resolutions, correspondence, and explanations, is only a statutory violation if the Court finds that such documents are included in the language "other instruments under which the plan is established or operated."

■■■■] The Eighth Circuit has not addressed the extent of disclosure required under the final clause of § 1024(b)(4),[7] and there is a split among the circuits that have addressed the issue.[8] This Court is persuaded by those circuits that have used a textualist approach, reading the plain language of the statute to require narrow disclosure. The statutory language of § 1024(b)(4) is clear and unambiguous. Because the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. See *United States v. Talley*, 16 F.3d 972, 975 (8th Cir.1994). The language "other instruments under which the plan is established or operated" indicates formal or legal documents under which a plan is set up or managed. See *Faircloth v. Lundy*, 91 F.3d 648, 653 (4th Cir.1996) (using the dictionary to aid its interpretation of the statute to hold that an IRS determination letter, the bonding policy covering the ESOP and its fiduciaries, and

appraisal or valuation reports of ESOP stock and supporting financial documents were not required to be disclosed as they were not formal documents under which the ESOP was set up or managed). The clause refers to formal documents that govern the plan, not to all documents by means of which the plan conducts operations. See *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 143 (2d Cir.1997) (holding that actuarial reports did not need to be disclosed under § 1024(b)(4)). The clause is limited to documents that are similar in nature to the documents specifically listed in § 1024(b)(4). See *Hughes Salaried Retirees Action Comm. v. Administrator of the Hughes Non–Bargaining Retirement Plan*, 72 F.3d 686, 691 (9th Cir.1995) (holding that a list of names and addresses of retired participants did not need to be disclosed under § 1024(b)(4) because it was not a document under which plan was established or operated).

As additional support for a narrow reading of the last clause § 1024(b)(4), this Court notes the use of the conjunction "or" before the words "other instruments under which the plan is established or operated." In effect, the statute reads "the administrator shall provide a, b, AND c, d, e, f, g, OR x." The use of the word "or" before the final clause indicates that the administrator must provide *either* the specified docu-

ever existed. Defendants could not produce a non-existent record.

7. The Eighth Circuit has discussed the extent of disclosure required under ERISA's fiduciary provision § 1104, stating, "the duty of loyalty requires an ERISA fiduciary to communicate any material facts which could adversely affect a plan member's interests." *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir.1997) (citing *Howe v. Varity Corp.*, 36 F.3d 746, 754 (8th Cir.1994), aff'd, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)), cert. denied, —— U.S. ——, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997). However, Plaintiff does not allege a failure to disclose under § 1104 or any other provision of subchapter four (ERISA's fiduciary provisions), but only under § 1024 of subchapter one (ERISA's reporting and disclosure provisions). Therefore, this Court does not rely on the line of Eighth

Circuit authority that broadly construes the reporting and disclosure provisions of a fiduciary under § 1104.

8. The Ninth, Fourth, and Second Circuits have narrowly interpreted the disclosure requirement, while the Sixth Circuit has interpreted § 1024(b)(4) to require broad disclosure to participants. See *Hughes Salaried Retirees Action Comm. v. Administrator of the Hughes Non–Bargaining Retirement Plan*, 72 F.3d 686 (9th Cir.1995) (en banc), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648 (4th Cir.1996), cert. denied, 519 U.S. 1077, 117 S.Ct. 738, 136 L.Ed.2d 677 (1997); *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139 (2d Cir.1997); *Bartling v. Fruehauf Corp.*, 29 F.3d 1062 (6th Cir.1994).

ments, which usually provide the type of information that Congress thought participants should have access to, *or* other documents under which the plan is established or operated that would provide such information.[9]

▆▆▆ As noted above, this Court finds the language of § 1024(b)(4) unambiguous. As a matter of construction, the administrator is required to provide "other instruments" only when the documents specifically listed under § 1024(b)(4) are unavailable, and then the administrator need provide only those documents that are similar in nature to the specifically listed documents. Minutes, resolutions, written communication, tax forms, and explanations need not be provided when the ESOP has been established and operated under the standard, specified documents. Additionally, minutes, resolutions, written communication, tax forms, and explanations are not formal instruments under which the plan is established or operated. Therefore, this Court finds that Defendants did not violate § 1024(b)(4) by failing to provide the additional requested documents. The only § 1024(b)(4) violation by Defendants was their failure to provide the 1995 annual report, a document specified under the statute, within the thirty-day limit imposed by § 1132(c). Section 1132(c) is the penalty statute for failure to comply with a request for information. The statute reads:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant *or* beneficiary within 30 days after such request may in the court's discretion be personally lia-

ble to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c). The language of the statute explicitly allows for liability at the court's discretion. See Wesley v. *Monsanto*, 710 F.2d 490, 491 (8th Cir.1983). There is nothing in § 1132(c) that requires, as a prerequisite to recovery, a showing of prejudice or harm to the participant as a result of not having received documents; § 1024(b)(4) is a reporting and disclosure provision for the purpose of providing a participant with knowledge as to "where he stands with respect to the plan." S.Rep. No. 93–127, reprinted in 1974 U.S.C.C.A.N. 4838, 4863; see *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 82–83 (1995) (stating that ability of participants to learn their rights under the plan is based on reliance on the face of written plan documents). The 1995 annual report should have been provided in a timely manner, that is, within thirty days of the written request, or by March 2, 1996. It was not provided until October 17, 1996, 229 days late.

As previously stated, when the record, viewed in the light most favorable *to* the nonmoving party, giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should be granted. In the instant case, Defendants are correct; there is no issue of material fact before the Court. However, the facts as presented indicate that the Defendant is not entitled to summary judgment as a matter of law. In fact, after the above review of facts and law, the Court finds that Plaintiff is entitled to summary judgment on this claim, even though he has not filed a cross-motion for summary judgment.[10]

---

**9.** The section could also be read as requiring au administrator to provide "(a, b) and ((c through g) or (x))." Under either interpretation, it is clear that providing "x" is an alter- native, whether to the provision of "a through g" or "c through g."

**10.** Although Plaintiff acknowledges the possibility for so moving.in his Brief and Argument

■] Generally, a district court cannot enter summary judgment sua sponte. See *Williams v. City of St. Louis*, 783 F.2d 114, *116* (8th Cir.1986).[11] A court may, however, grant summary judgment against the party making a Rule 56 motion, even when the non-moving party has not made a cross motion for summary judgment. See *Johnson v. Bismarck Public School District*, 949 F.2d 1000, 1004–05 (8th Cir. 1991). What is important is that the parties are given "a full and fair opportunity to develop the record." *Johnson*, 949 F.2d at 1005 (citing *Fountain v. Filson*, 336 U.S. 681, 682–83, 69 S.Ct. 754, 93 L.Ed. 971 (1949)). Both parties agree as to the relevant material facts, and both parties were given a full and fair opportunity to develop the record on this issue.[12] The Court, therefore, believes that it is appropriate to grant summary judgment for Plaintiff.

■ The Court has the discretion to award Plaintiff between $0 and $22,900 under § 1132(c), which is the equivalent of a penalty up to $100 per day for 229 days. The Court keeps in mind that the purpose of § 1132(c) is to compel timely disclosure. See *Pagovich v. Moskowitz*, 865 F.Supp. 130, 138 (S.D.N.Y.1994). It is appropriate for this Court to determine the amount of the penalty without hearing further evidence on the issue because, as noted above, the record was fully developed in this area, and the statute grants this Court discretion. When determining penalty

amounts under § 1132(c), courts may look to factors such as bad faith, or lack of control, on the part of the administrator, and prejudice or harm to the participant, but the existence of those factors is not a prerequisite to the imposition of liability. See *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 588 (1st Cir. 1993); *Godwin v. Sun Life Assurance Co.*, 980 F.2d 323, 327 (5th Cir.1992); *Harsch v. Eisenberg*, 956 F.2d 651, 662 (7th Cir. 1992), *cert. denied*, 506 U.S. 818, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir.1994); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir.1993). At the hearing on this motion Defendants did not offer any explanation for the delay exceeding six months, but neither was any showing of bad faith made. Plaintiff did not offer any evidence that the delay was prejudicial or harmful to his case.[13] Since there are no aggravating factors in the case at bar, such as malicious intent on the part of the administrator, nor extreme prejudice to Plaintiff, the Court does not award the statutory maximum of $100 per day, but instead awards Plaintiff $5725, the equivalent of $25 a day for 229 days.[14]

### B. Breach of Fiduciary Duty—Delay in Investing ESOP Assets

■ Plaintiffs Amended Complaint states that after the September 29, 1994 merger and resulting exchange of ESOP stock for cash, Defendants took an "unrea-

---

in Resistance to Motion for Summary Judgment.

11. For a discussion of the district court's *sua sponte* power to order summary judgment see *Dayton Elec. Mfg. Co. v. APCOM, Inc.*, 782 F.Supp. 389, 393 (N.D.Ill.1992) (noting that Johnson seems to move away from the hard line of *Williams* ).

12. In addition, in light of the fact that the Court is granting summary judgment for Defendants on Plaintiff's other claims, it would be inefficient for this Court to have a trial solely on an issue about which both sides have had ample opportunity to present evidence and there is no dispute as to material facts.

13. Plaintiff did suggest that the delay in providing documents kept him from timely asserting his breach of fiduciary claims. However, the statute began to run on his claim for breach of fiduciary duty for unreasonable delay on January 1, 1995, when Plaintiff did not receive or fill out an asset allocation form, see discussion *infra* Section IIIB, and the statute began to run on his claim for breach of fiduciary duty for failure to diversify on October 13, 1994, when Plaintiff found out that the ESOP funds had been invested in Treasury bills, see discussion *infra* Section IIIC. Therefore, this argument is without merit.

14. The delay may have been due merely to sloppy administration or poor legal work, the record does not offer an explanation.

sonably long period of time" in which to either terminate the ESOP and distribute the proceeds or to roll the funds into the existing 401(k) plan, thereby violating their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A) and (B). In Plaintiffs deposition he testified that a "reasonable" amount of time so as not to violate the duties of loyalty and prudence would have been three months, or by December 31, 1994. Defendants argue that Plaintiffs claim is time barred under 29 U.S.C. § 1113.

■■■ The statute of limitations reads:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation ... except in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. The provision that applies here is § 1113(2), as it sets out the earlier of the two dates under the facts in this case. There have been no allegations of fraud or concealment, so the statute of limitations is three years. The statute mandates a two-step process for determining when an action accrues under ERISA. *See Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir.1995) (citing *Ziegler v. Connecticut General Life Ins. Co.*, 916 F.2d 548, 550 (9th Cir.1990)). First, the court must determine when the alleged breach or violation occurred. See *id.* Second, the court must determine when the plaintiff had actual knowledge of the alleged breach or violation. See *id.*

Viewing the facts in the light most favorable to Plaintiff, the alleged breach occurred January 1, 1995, when the period of time for making the distribution or rollover decision was no longer "reasonable," being outside of the three months specified by Plaintiff. The second question is when did the Plaintiff have "actual knowledge" of the breach? The Eighth Circuit has not had occasion to define "actual knowledge" under § 1113(2). Actual knowledge has been defined in a sister circuit as knowledge of the "essential facts" of the transaction or conduct that constitutes the violation. *See Rush v. Martin Petersen Co., Inc.*, 83 F.3d 894, 896 (7th Cir.1996). Another circuit has defined actual knowledge as knowledge of all "material facts" necessary to understand that a claim exists. *See Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir.1996), *cert. denied*, 522 U.S. 913, 118 S.Ct. 297, 139 L.Ed.2d 228 (1997). Such knowledge could include necessary expert opinions, knowledge of harmful consequences, or even actual harm. See *id.* However, "actual knowledge" does not require knowledge of every detail of a transaction or the illegality of the transaction. *See Rush*, 83 F.3d at 896.

Plaintiff states that until Defendants provided documents on October 17, 1997, he had insufficient information as to the nature of the breach to qualify as actual knowledge. Defendants counter that Plaintiff must have had actual knowledge by December 31, 1994, because if the distribution or rollover were to take place by that date, then Plaintiff would have had to make an election with regard to his ESOP funds. That is, Plaintiff would have to make a formal allocation decision indicating to Defendants whether to receive a lump sum distribution, or to self-direct the funds into another plan, or to roll the funds into the 401(k) plan.

■■■ The question is whether Plaintiff knew of the "essential facts" comprising a claim for breach of fiduciary duty as asserted in his Complaint. The essential facts comprising a claim for breach of fidu-

ciary duty for unreasonably delaying the investment of ESOP assets are: (1) a failure to invest; (2) within a reasonable time period; (3) by a fiduciary. Plaintiff had knowledge of Defendants' failure to invest within a reasonable time period as of January 1, 1995. Since Plaintiff did not have to make an election of any sort with regard to his ESOP investment by December 31, 1994, he knew that no distribution or rollover had taken place. The statute of limitations, therefore, should run from January 1, 1995. As Plaintiff filed his [First] Amended Complaint, in which he for the first time raised fiduciary duty claims, on February 18, 1998, and not by January 1, 1998, Plaintiffs claim is time-barred, and Defendants are entitled to summary judgment as a matter of law with respect to the Paragraph 19 claim in Count II of Plaintiffs [Second] Amended Complaint.

 Even if the Court assumes that Plaintiff did not have actual knowledge before February 18, 1995, so that his claim was not time-barred, the decision to roll the ESOP funds into the 401(k) plan was a business decision, not subject to the fiduciary standards of § 1104. Employers are generally free to adopt, modify, or terminate pension benefit plans without incurring the responsibilities of a fiduciary. See *Lockheed Corp. v. Spink*, 517 U.S. 882, 890–91, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). Specifically, the Third Circuit has held that

> [e]fforts by an employer to merge two pension plans do not invoke the fiduciary duty provisions of ERISA. Such duties do not attach to business decisions related to modification of the design of a pension plan, and in such circumstances the plan sponsor is free to act "as an employer and not a fiduciary."

*Malia v. General Elec. Co.*, 23 F.3d 828, 833 (3d Cir.1994) (citation omitted), *cert. denied*, 513 U.S. 956, 115 S.Ct. 377, 130 L.Ed.2d 328 (1994); Accord *Sutter v. BASF*, 964 F.2d 556, 562 (6th Cir.1992). The Eighth Circuit has recognized that ERISA does not prohibit an employer

from acting in its own interest when not administering the plan or investing its assets. See *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir.1988); Martin, 965 F.2d at 666 (stating that sweeping liability is inconsistent with "congressional intent to encourage the use of ESOPs as a technique of corporate finance").

 A district court must apply the *Hickman* standard to the specific transaction at issue to determine whether the conduct is subject to fiduciary duties under ERISA. See *Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir.1992), cert. denied, 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993). The *Martin* court has explained Hickman, stating, "ERISA's fiduciary duties under § 1104 attach only to transactions that involve investing the ESOP's assets or administering the plan." *Id.* Plaintiffs Complaint itself only implicates Defendants' business decisions, claiming a breach of fiduciary duty by taking an "unreasonably long time in which to either: entirely *terminate* the fund ... or *roll* the fund into the existing Statesman 401(k) fund" (emphasis added). The decision whether to terminate is clearly a business decision. See *Curtiss–Wright Corp.*, 514 U.S. at 78, 115 S.Ct. 1223; *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir. 1998). This Court finds that the decision whether to rollover one plan into another is a decision of amendment, design, or modification, not of investment or administration.

 Even if the decision of when to rollover the Statesman plan implicated a fiduciary duty, the claim as set forth by Plaintiff only involves the actions of Defendant American Life. According to the amended and restated ESOP document, only the sponsor can amend or terminate the ESOP. Therefore, only the sponsor, American Life, could have a fiduciary duty with respect to a delay in the decision to terminate or amend the ESOP.[15]

Viewing the record in the light most favorable to Plaintiff, Defendant American

---

**15.** Defendants Gongaware and Dick cannot even be considered fiduciaries for purposes of this claim because they were appointed to the

Administrative Committee on January 1, 1995, the day the Plaintiff's "reasonable" pe-

Life is a fiduciary generally with regard to the plan in its capacity as plan sponsor, and is a fiduciary with respect to the breach of fiduciary duty claim here as a result of the actions of its representative Matovina. However, there is no evidence in the record that Matovina did more than tell the trustee what the employer's options were with regard to the ESOP, that is, termination or merger into another plan. In other words, Matovina communicated the intentions of the employer with regard to the possible termination, modification, or amendment of the plan. There is no evidence in the record that Matovina ever directed Bank One as to its investments or administration of the ESOP. Defendant American Life's actions were, therefore, as a matter of law, actions as an employer, not a fiduciary. Summary judgment for Defendants is appropriate as there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

### C. Breach of Fiduciary Duty—Failure to Diversify

■■■ Defendants argue that Plaintiffs claim for breach of fiduciary duty based on a failure to diversify is also barred by the statute of limitations under 29 U.S.C. § 1113. Plaintiff responds that the claim is not barred under § 1113(2) because he did not have actual knowledge of the violation before February 14, 1995. Again, the provision that applies is § 1113(2), as this section sets out the earlier date under the facts in this case. Again, there have been no allegations of

riod of time in which to allocate the ESOP's assets ended. Bank One also cannot be considered a fiduciary with respect to this claim. The claim is for a breach of fiduciary duty by delaying the termination or merger of the ESOP. While the duties of Defendant Bank One, as trustee, clearly involved the investment and administration of the ESOP assets, there is no evidence in the record that Bank One had any responsibility for the decision when or how to terminate or merge the ESOP. In fact, the decision to invest in short-term Treasuries reflects a complete lack of authority regarding such decision. Bank One

fraud or concealment, so the statute of limitations is three years from the earliest date *on* which the plaintiff had actual knowledge of the breach of fiduciary duty asserted. "Actual knowledge" is knowledge of the "essential facts" needed to make out a claim. See *Rush,* 83 F.3d at 896; *Librizzi v. Children's Memorial Medical Center,* 134 F.3d 1302, 1306–07 (7th Cir.1998) (defining "actual knowledge" as the time the employee learns of the adverse actions, not when he feels the financial consequences of the actions, or when he understands the legal significance of those actions).

■■■ The essential fact comprising "actual knowledge" of a claim for breach of fiduciary duty for failure to diversify ESOP assets is knowledge that the ESOP funds are not invested in a diverse portfolio. Plaintiff, therefore, had "actual knowledge" of the fact that the ESOP funds were not diversified when he learned on October 13, 1994, that the funds had been invested almost entirely in U.S. Treasury bills. The statute of limitations for filing his action therefore bars any claim for breach of fiduciary duty filed after October 13, 1997. Since Plaintiff did not file his [First] Amended Complaint in which he raised this claim until February 18, 1998, this claim is time barred. Defendants' motion for summary judgment is granted with respect to Paragraph 20 of Count II of Plaintiffs [Second] Amended Complaint.

### IV. Conclusion

Plaintiff is granted summary judgment on Count I. Defendants are granted sum-

made an investment decision with regard to the assets that was conservative and accessible, thereby minimally affecting the timing or substance of the business decision to be made. The only other possible fiduciaries would be Brown, Clark, and Crowley. But again, the Administrative Committee was not responsible for termination or modification of the ESOP according to the plan document, and therefore, could not have violated a fiduciary duty with regard to a delay in making a decision regarding termination or modification.

mary judgment on both of their claims in Count II.

IT IS SO ORDERED.